**Opinion issued April 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00906-CV

———————————

## IN RE AXIS ENERGY MARKETING, LLC, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relator Axis Energy Marketing, LLC seeks mandamus relief to vacate the trial court's August 23, 2023 order denying relator's motion to transfer venue and plea in abatement and to direct the trial court to abate the Harris County lawsuit.[1] We conditionally grant the petition.

---

[1] The underlying case is *Apricus Enterprises, LLC v. Axis Energy Marketing, LLC* , cause number 2023-47355, pending in the 190th District Court of Harris County, Texas, the Honorable Beau A. Miller presiding.

**Background**

Axis Energy Marketing, LLC sources crude oil, which is then delivered by suppliers to Axis's customers. DK Trading & Supply LLC and Lion Oil Company, LLC (collectively "Delek") entered into an agreement with Axis to supply West Texas sour crude oil to locations Delek designated, including Enterprise Station #7 in Midland County, Texas. Axis then contracted with real party in interest, Apricus Enterprises, LLC, to provide and deliver the oil to locations Delek specified in Midland. Axis and Apricus agreed that the terms and conditions in the 2017 ConocoPhillips Domestic Crude Oil and Condensate Agreements governed the transaction between them.

After the crude oil was delivered, Delek alleged that the oil was contaminated and filed suit against Axis in Midland County on April 19, 2023, asserting claims of breach of contract, fraud, and negligence and gross negligence. Axis contends that the parties were in discussions when, on July 27, 2023, Apricus filed suit in Harris County against Axis for its failure to pay for the crude oil purchased, alleging claims for breach of contract, sworn account, and quantum meruit.

Axis then filed a document containing both a motion to transfer venue and a plea in abatement. In the motion to transfer venue portion, Axis argued that venue was improper in Harris County and was proper in Midland County. In the plea in

abatement portion of this document, Axis claimed that Midland County had venue and had acquired dominant jurisdiction, which required the Harris County suit to be abated. After a response and reply were filed, the trial court held a hearing, and on August 23, 2023, signed an order denying the motion and plea and giving no reasons for the denial. Before the trial court signed this order, Axis had added Apricus as a third-party defendant in the Midland lawsuit. Apricus filed a plea in abatement in the Midland court, but it was denied.

On October 6, 2023, Axis filed a motion to reconsider the Harris County court's denial of its plea in abatement. Three days later, Apricus filed a motion for summary judgment on liability and set it for a hearing on October 30, 2023. Axis filed an emergency motion for a continuance of the summary judgment hearing, asserting that it would prevent Axis from conducting any meaningful discovery and would harm its ability to defend against Apricus's claims and to prosecute its counterclaims.

The trial court held a hearing on November 17, 2023, allegedly on four motions, including Axis's motion to reconsider, but the argument during the hearing focused on Apricus's motion for summary judgment. No rulings were made during the hearing. On November 27, 2023, the trial signed several orders, denying Axis's motion to reconsider the denial of its plea in abatement, denying Axis's motion for

3

continuance, and granting Apricus's motion for summary judgment on liability. A hearing was scheduled for January 19, 2024, for attorney's fees.

Axis filed its petition for writ of mandamus on December 6, 2023. Although the petition was initially assigned to the Fourteenth Court of Appeals, that court issued an order, transferring the case to this Court pursuant to Local Rule 1.5. 14th Tex. App. (Houston) Loc. Ru. 1.5. Before the transfer, the Fourteenth Court had granted a stay of all trial court proceedings, and by order of December 12, 2023, we ordered that the previously-ordered stay of all trial court proceedings was to remain in effect and directed real party in interest Apricus to file a response, which was filed on January 8, 2024.

**Standard of Review**

To be entitled to mandamus relief, a relator must show that the trial court clearly abused its discretion and the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A clear abuse of discretion occurs "when a trial court 'reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *In re Mabray*, 355 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (quoting *Johnson v. Fourth Ct. of Apps.*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). As the reviewing court, we may not substitute our

judgment for the trial court's even if we would have decided the issue differently unless the decision was arbitrary and unreasonable. *Mabray*, 355 S.W.3d at 22.

In its petition for writ of mandamus, Axis challenges only the trial court's denial of the plea in abatement as an abuse of discretion. Texas courts hold that, if two suits are inherently interrelated, a plea in abatement filed in the second suit "*must be granted*" and the trial court abuses its discretion in denying the plea. *See In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 294, 298 (Tex. 2016) (orig. proceeding) (emphasis in original). And if we find that the trial court abused its discretion, Axis need not show that it lacked an adequate remedy by appeal. The Texas Supreme Court has held that "a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a plea in abatement in a dominant-jurisdiction case." *Id.* at 299–300. Thus, if Axis establishes that the trial court abused its discretion in failing to grant its plea in abatement, we are to presume that Axis lacks an adequate remedy by appeal. *See id.*

**Dominant Jurisdiction**

Axis contends that the trial court abused its discretion in denying the August 23, 2023 order denying the plea in abatement.[2] This motion asserted both that venue

---

[2] The plea in abatement was included in a document that contained both a motion to transfer venue and the plea in abatement. The trial court denied both the motion to transfer venue and plea in abatement by order signed on August 23, 2023, merely saying both requests for relief were denied. Axis does not contest the denial of the motion to transfer venue in the petition for writ of mandamus.

was proper in Midland County where Delek has filed suit against Axis and that the doctrine of dominant jurisdiction required abatement of the Harris County suit. Apricus filed a response to the motion to transfer venue but did not respond to the plea in abatement.

"The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974). "The dominant jurisdiction analysis is applicable, however, only when multiple suits are inherently interrelated and venue is proper in each county." *Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336, 357 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) (orig. proceeding)). "The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, 'its action must necessarily be exclusive' because it is 'impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties.'" *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). Pragmatically, there are further justifications for abatement, including efficiency and fairness. *See id.* There are exceptions to applicability of dominant jurisdiction[3] but none have been raised in this case.

---

[3] Exceptions to the dominant-jurisdiction rule arise "when the first court does not have the full matter before it, or when conferring dominant jurisdiction on the first

6

## 1. Inherent Interrelationship

The question of which court has dominant jurisdiction arises when there are inherently interrelated lawsuits in two different counties. *See J.B. Hunt Transport*, 492 S.W.3d at 292. To determine if two pending suits are inherently interrelated, courts are guided by the compulsory-counterclaim test which requires a showing of six characteristics:

(1) it is a claim within the jurisdiction of the court;

(2) not the subject of a pending action;

(3) which at the time of filing the pleading the pleader has against any opposing party;

(4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(5) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

*In re Tex. Christian Univ.*, 571 S.W.3d 384, 389 (Tex. App.—Dallas 2019, orig. proceeding) (citing TEX. R. CIV. P. 97(a)). To determine if two suits are inherently

---

court will delay or even prevent a prompt and full adjudication, or when the race to the courthouse was unfairly won." *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). The dominant-jurisdiction rule is inapplicable when "a party's conduct estops him from asserting dominant jurisdiction, if joinder of parties is infeasible or impossible, or if the plaintiff in the first case is not intent on prosecuting his claims." *Id.*

interrelated or arise out of the same transaction or occurrence, courts apply the "logical relationship test," which "is met when the same facts, which may or may not be disputed, are significant and logically relevant to both claims." *Id.* at 389–90.

Axis contends that the same facts—concerning the very same crude oil—are significant and logically related to the suits in both Midland and Harris Counties and therefore, the same transaction or occurrence requirement is met. Apricus disagrees, asserting that the parties are different in that the Midland County lawsuit involves Delek and Axis and the Harris County lawsuit involves Apricus and Axis. Apricus further argues that the Harris County lawsuit is the first one concerning the contract between Axis and Apricus, and the claims asserted in the two lawsuits are different. Finally, Apricus contends that Axis is essentially seeking indemnification, which does not meet the compulsory-counterclaim test.

Axis responds first by arguing that the exact parties and issues are not required. *See Guy v. Damson Oil Corp.*, No. 13-91-028-CV, 1997 WL 33760709, at \*4, 6 (Tex. App.—Corpus Christi-Edinburgh Mar. 27, 1997, no writ) (mem. op.). In *Guy*, the first and second suit involved most but not all of the same defendants, both arose from the same transaction and involved the same property interests. *See id.* at \*5–6. In both suits, the same plaintiff sought to acquire the benefits of mineral

rights in the same property and therefore, the court determined that the evidence was sufficient to show that the two suits were inherently interrelated. *See id.* at \*6.

Similarly, in *In re Second Street Properties. LLC*, the Fourteenth Court of Appeals held that the trial court abused its discretion by denying a plea in abatement because both lawsuits presented the same threshold issue—the identity of the general partner of the partnership. *See* No. 14-16-00390-CV, 2016 WL 7436649, at \*1–3 (Tex. App.—Houston [14th Dist.] Dec. 22, 2026, orig. proceeding) (mem. op.). The partnership was a named plaintiff in both suits, and the court determined that if both courts decided the issue of which party was the general partner and authorized to bring suit, it would lead to a waste of judicial resources, duplication of costs, and potentially conflicting decisions. *See id.* at \*3.

Even if parties and claims are not identical, it is sufficient if the claims can be amended to bring in all necessary and proper parties. *See Comp-E-Ware Tech. Assocs., Inc. v. Mushkin, Inc.*, 629 S.W.3d 549, 555 (Tex. App.—Fort Worth 2021, pet. denied). Axis has brought Apricus into the Midland County lawsuit as a third-party defendant, alleging breach of contract, negligence, and third-party liability.

We agree with Axis that, although the two suits involve different plaintiffs, they present the issue of liability for payment for the same crude oil, which was alleged to be contaminated by the ultimate user. The obvious reason for Axis's plea in abatement is that having two lawsuits concerning payment for the crude oil could

9

result in Axis being held liable twice for the same crude oil. Axis was sued in Midland County by Delek, the purchaser of the crude oil, for the cost of the crude oil and for the damages caused by the alleged contamination of that crude oil. Axis has also been sued for the cost of the same crude oil by Apricus who supplied the crude oil. Thus, Axis is currently a defendant in two lawsuits for payment for the same crude oil, which if the plaintiffs are both successful, would result in Axis being liable for payment for the same crude oil twice, as well as for other alleged damages.

Axis contended in the trial court that the two lawsuits were inherently interrelated because the resolution of the Midland County lawsuit would have a "significant, if not dispositive, impact on the majority of Apricus's claims in this lawsuit." Axis argued that the Midland County trier of fact could determine that the oil Apricus delivered to Delek was contaminated, which would be fatal to Apricus's claims against Axis.

Apricus disagrees, arguing that there is no foundation for conflating the dispute between Axis and Delek with the dispute between Apricus and Axis because the contract between Delek and Axis was for the sale of crude oil in Midland without reference to Apricus and was "wholly distinct and unrelated to the Agreement between Axis and Apricus." But this ignores the fact that the allegedly contaminated crude oil Apricus sold to Axis is the same crude oil that Axis sold to Delek. And although Apricus contends the issues are different in the two suits, both involve

10

payment for the same crude oil and Axis has raised the alleged contamination of the crude oil as a defense to liability.

Apricus, however, interprets Axis's claim concerning contamination of the crude oil as one seeking indemnification for the damages it owes. Citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999), Apricus contends that, because a claim for indemnification does not mature until the indemnitee's liability is "fixed and certain," Axis may not bring a compulsory counterclaim for indemnification in the Midland suit. This argument has two parts: whether a claim must be a compulsory counterclaim for dominant-jurisdiction analysis to apply and whether an indemnification claim fails the compulsory-counterclaim test such that this claim is not inherently interrelated to the Midland County claims.

As to the first question, Axis disagrees, noting that merely because courts are to be guided by the compulsory-counterclaim rule, not all requirements for a compulsory counterclaim are required to be shown. *See In re PlainsCapital Bank*, No. 13-17-00021-CV, 2018 WL 2979836, at *9 n.5 (Tex. App.—Corpus Christi-Edinburgh June 8, 2018, orig. proceeding) (citing *Hopkins v. NCNB Tex. Nat'l Bank*, 822 S.W.2d 353, 355 (Tex. App.—Fort Worth 1992, no writ) (which held that compulsory counterclaim need not be alleged in second suit for inherent interrelationship to exist). In *French v. Gilbert*, the Frenches challenged the trial court's abatement of their malpractice suit in Harris County based on appellees' first-

11

filed Montgomery County suit against the Frenches for attorney's fees. *See* No. 01-07-00186-CV, 2008 WL 5003740, at \*3 (Tex. App.—Houston [1st Dist.] Nov. 26, 2008, no pet.). The Frenches claimed that the trial court abused its discretion in abating their lawsuit because their malpractice claims were not compulsory counterclaims in the Montgomery County attorney's fees case. *See id.* A panel of this Court responded to this argument as follows:

> The Frenches' argument misconstrues the standards by which a trial court is to make a determination of whether abatement is mandatory under a claim of dominant jurisdiction. In deciding whether abatement is mandatory, a trial court must determine whether there exists "an inherent interrelation of the subject matter" in the two suits. If so, the granting of a plea in abatement is mandatory, even when there is not already a complete unity of issues and parties between the two suits, so long as the claim in the first suit may be amended to bring in all necessary parties and issues.
>
> . . . .
>
> This requirement that the trial court be "guided" by the compulsory counterclaim rule likewise guides our review as to whether a trial court has abused its discretion in determining the question of an inherent interrelationship between two suits. However, it does not establish that a trial court abuses its discretion if it finds that there is an inherent interrelationship between two suits when one or more elements of the compulsory counterclaim rule are not met as to the claim in the second suit.

*Id.* at \*6 (citations omitted). This language clarifies that a complete unity of parties and issues need not exist and not all elements of a compulsory counterclaim need to be met to determine that the two suits are inherently interrelated.

12

But because Apricus focuses on Axis allegedly seeking indemnification, we address that argument. A claim for third-party indemnification is contingent and not mature until liability is determined. *Ingersoll-Rand*, 997 S.W.2d at 208. To determine the accrual date of an indemnity claim, we look to the contract. "There are two types of indemnity agreements, those that indemnify against liabilities and those that indemnify against damages." *Id.* at 207. A broadly-worded provision that "holds the indemnitee 'harmless' against 'all claims' and 'liabilities' evidences an agreement to indemnify against liability." *Id.* Such a provision entitles the indemnitee to recover when liability is "fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment." *Id.* But a party may assert an indemnity claim before there is a judgment establishing liability, in which case the claim is permissive, not compulsory. *See id.* at 209–10.

The contract between Axis and Apricus contains an indemnity provision that holds Axis, as buyer, harmless from "all losses, liabilities, expenses, demands, actions, suits, damages, settlements, judgments, and claims" that occur before delivery or after delivery to the buyer. Thus, this is a broadly-worded provision that evidences an agreement to indemnify against liability and this claim accrues when liability becomes fixed and certain by rendition of a judgment of liability against Axis. *See id.*

13

Although any indemnity claim brought by Axis against Apricus in the Harris County suit would be a permissive counterclaim and not compulsory, Axis has other counterclaims for negligence and breach of contract. Axis has also alleged these claims in its third-party petition in Midland County.[4] And despite Apricus's arguments concerning the maturity of Axis's claim for indemnity, not all requirements of the compulsory-counterclaim rule must be shown for a determination that the suits are inherently interrelated. *See, e.g.*, *Encore Enters., Inc. v. Borderplex Realty Trust*, 583 S.W.3d 713, 723 (Tex. App.—El Paso 2019, no pet.). The compulsory-counterclaim rule is merely a guide. *See id.* Thus, the argument about indemnity not being a mature claim does not prevent a finding that the two suits are inherently interrelated.

We conclude that the claims in both Midland and Harris Counties, which concern the same crude oil, the alleged contamination of that crude oil, and how that alleged contamination affects liability for payment for the crude oil, are facts that are significant and logically related to both suits. *See Tex. Christian Univ.*, 571 S.W.3d at 389–90. Accordingly, we conclude that Axis established that the two suits are inherently interrelated.

---

[4] The mandamus record does not include Axis's answer and counterclaims or affirmative defenses, but Apricus lists and addresses those counterclaims in its motion for summary judgment.

14

## 2. Venue

We next consider whether venue was proper in both or either of the two counties. The Texas Supreme Court has stated that "unless venue would be proper in both . . . counties, the concept of 'dominant jurisdiction' is inapplicable to this case." *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005). Although the general rule mentions venue being proper in both counties, "[t]he court in which suit is first filed generally acquires dominant jurisdiction to the exclusion of other courts *if venue is proper in the county in which suit was first filed.*" *Id.* (emphasis added). Thus, if Midland County is shown to have proper venue, that is sufficient for the doctrine of dominant jurisdiction to apply.

Although Axis is not challenging the denial of its motion to transfer venue, Axis argued that venue was proper in Midland County. Apricus opposed the motion to transfer venue, asserting that the mandatory venue provision, section 65.023, was inapplicable because that statute compels mandatory venue in defendant's county of domicile only if the plaintiff's suit is primarily injunctive in nature. *See* TEX. CIV. PRAC. & REM. CODE § 65.023(a). Apricus further argued that venue was proper in Harris County under Texas Civil Practice and Remedies Code section 15.002(a) because all or a substantial part of the events or omissions giving rise to its claims occurred in Harris County and it is entitled to deference for its venue choice. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a).

15

But Axis has not challenged the denial of the motion to transfer venue. All that must be shown for dominant jurisdiction to apply is that venue would be proper in both counties. *See Gonzalez*, 159 S.W.3d at 622. Thus, we review the venue arguments made in the trial court to determine if Axis established that venue was proper in Midland County, even if it were also proper in Harris County.

### a. Mandatory venue statute does not apply

Section 65.023 provides that a suit for a writ of injunction against a party who resides in Texas "shall be tried in a district or county court in the count in which the party is domiciled." TEX. CIV. PRAC. & REM. CODE § 65.023(a). The Texas Supreme Court has held that this statute is "operative only when a plaintiff's pleadings in the underlying suit establish the relief sought is 'purely or primarily injunctive.'" *In re Fox River Real Estate Holdings, Inc.*, 596 S.W.3d 759, 765 (Tex. 2020) (orig. proceeding). Thus, if the request for injunctive relief is "merely ancillary" to the main relief sought, "section 65.023(a) has no application." *Id.* at 765–66.

The Texas Supreme Court has stated that "the Legislature did not intend for the tail to wag the dog," and thus, section 65.023 applies only when the pleadings seek relief that is "primarily or purely injunctive," such as where a plaintiff sought to remove a television antenna allegedly interfering with an airport runway. *See id.* at 765 (citing *Brown v. Gulf Television Co.*, 306 S.W.2d 706, 707 (Tex. 1957)); *see also In re Dole Food Co., Inc.*, 256 S.W.3d 851, 855 ((Tex. App.—Beaumont 2008,

16

orig. proceeding) (determining that section 65.023 applied because plaintiff was seeking "truly injunctive" relief to protect existing and potential contracts from interference by strangers to contracts). "When the injunctive relief is sought simply to maintain the status quo pending resolution of the lawsuit, then the injunctive relief is ancillary to the relief sought and section 65.023 does not apply." *In re FPWP GP LLC*, No. 05-16-01145-CV, 2017 WL 461255, at *3 (Tex. App.—Dallas 2017, orig. proceeding).

In this case, Apricus's pleading stated that it sought a temporary restraining order to preserve the status quo until a hearing could be held on its request for a temporary injunction. Apricus based its request for injunctive relief on *Walling v. Metcalfe*, 863 S.W.2d 56 (Tex. 1993), in which the Court held that, even though it is unusual, "circumstances can arise in which a temporary injunction is appropriate to preserve the status quo pending an award of damages at trial." *Id.* at 58.

Apricus sought injunctive relief to preserve the status quo because it argued it could demonstrate a probable right to relief and a probable injury before trial "if Axis is able to transfer or otherwise distribute funds." These facts clearly show that the injunctive relief Apricus sought was ancillary and thus, section 65.023 is inapplicable here.

**b. Permissive venue appropriate in both counties**

Axis also argued in the trial court that under section 15.002(a) venue was

17

proper in Midland County. According to section 15.002(a), venue is proper "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). In breach of contract cases, courts consider "where the contract was made, performed, and breached." *See In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 323 (Tex. 2016) (orig. proceeding).

In determining whether the doctrine of dominant jurisdiction applies, we need not determine that venue in Harris County is improper. We need only decide whether venue in Midland County would also have been proper. *See id.* (finding that dominant jurisdiction applied when record showed venue was proper in both counties). Apricus has not argued in its response to the petition that venue in Midland County is improper.

In its response to Axis's motion to transfer venue in the trial court, Apricus asserted that venue was improper in Midland County because its choice of venue should not be disturbed when venue is proper in Harris County under the permissive statute. *See Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 677 (Tex. App.—Austin 2003, no pet.). In its response in the trial court, Apricus only addressed the motion to transfer venue and, although it mentioned that venue could be proper in Midland County and Harris County, it stated:

> [I]t is well established that venue can be proper in more than one county and a substantial part of the events or omissions giving rise to a claim

18

> may occur in more than one county. Even if some facts would otherwise support permissive venue in Midland County, Axis has introduced no facts that demonstrate that Houston would be an improper county for this lawsuit, and consequently, the Court should maintain the lawsuit in Harris County.

While Apricus's arguments may be applicable to whether the trial court abused its discretion in denying the motion to transfer venue, that ruling was not challenged in Axis's petition for writ of mandamus. The only ruling challenged was the trial court's denial of the plea in abatement concerning dominant jurisdiction.

In its response to Axis's argument under section 15.002(a), Apricus asserted that Axis had failed to present prima facie proof that venue was maintainable in Midland County. But Axis asserted that significant events and omissions giving rise to Apricus's claims occurred in Midland County, including that Axis is located there, Axis accepted the terms of the contract there, and the performance of the contract was performed there as the majority of deliveries of crude oil were delivered to locations in Midland County.

We conclude, based on the record before us, that Axis established the propriety of venue in both counties. In its motion, Axis asserted that its principal place of business is in Midland County, the contract between Axis and Apricus was accepted by Axis in Midland County and concerned the delivery of crude oil to locations in Midland County, and the majority of damages caused by Apricus's delivery of allegedly contaminated oil occurred in Midland County. These facts are

19

sufficient to show that permissive venue was proper in Midland County, even if it was also proper in Harris County. And proper venue in both counties is all that is required for dominant jurisdiction to apply. *See Red Dot Bldg.*, 504 S.W.3d at 323.

Accordingly, the record supports a finding that venue is proper in both Midland and Harris Counties and, because Axis established that the two lawsuits are inherently interrelated, the Midland County court acquired dominant jurisdiction and the trial court was required to grant Axis's plea in abatement. *See id.* at 322. The trial court abused its discretion in failing to do so.

## Conclusion

Having concluded that the trial court abused its discretion in denying the plea in abatement, we conditionally grant the petition for writ of mandamus directing the Harris County trial court to (1) vacate the portion of the August 23, 2023 order denying Axis's plea in abatement, and (2) grant the plea in abatement. We are confident the trial court will comply, and the writ will issue only if it does not.

Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.